fore be that as to the brewing company the judgment is reversed, unless plaintiff stipulates within 20 days to reduce the recovery to the sum of $7,500, together with a proportionate amount of the extra allowance; and, if plaintiff so stipulates, the judgment as modified is affirmed, with costs. As to the defendant the Long Island Railroad Company, the judgment should be reversed and a new trial granted; costs to abide the event.

All concur, except BARTLETT, J., who dissents as to reduction only.

(15 App. Div. 588.)

CONEY ISLAND, FT. H. & B. R. CO. v. KENNEDY et al.

(Supreme Court, Appellate Division, Second Department. April 13, 1897.)

1. STREET RAILROADS—WHEN FRANCHISE BECOMES COMPLETE.
   The franchise of a street-railroad company becomes complete when the consents of the local authorities and of the abutting property owners are obtained.

2. SAME—EFFECT OF SUBSEQUENT LEGISLATION.
   A street-railroad franchise, after it has become complete, cannot be destroyed by subsequent legislation, except by the exercise of the power of eminent domain.

3. SAME—FORFEITURE OF FRANCHISE—FAILURE TO CONSTRUCT ROAD.
   Laws 1892, c. 676, § 99, as amended by Laws 1893, c. 434, making it a cause of forfeiture not to complete a road within three years after obtaining the necessary consents, does not ipso facto dissolve the corporation on noncompliance.

4. SAME—CONSTRUCTION IN PARK.
   Laws 1892, c. 676, § 108, forbidding the construction of surface railroads in public parks, does not apply to a park laid out after a railroad franchise has been acquired.

Appeal from special term, Kings county.

Action by the Coney Island, Ft. Hamilton & Brooklyn Railroad Company against Elijah R. Kennedy and others, as commissioners of the Shore Road Driveway, to enjoin defendants from interfering with the construction and operation of plaintiff's railroad on Stewart or Fifth avenue, between Denyse street and the Old Shore Road. From an order granting the injunction, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Robert D. Benedict, for appellants.
James C. Church, for respondent.

CULLEN, J. The plaintiff is a street-surface railroad corporation incorporated for that purpose under the general railroad act of this state. In March, 1893, the local authorities of the town of New Utrecht granted the plaintiff the right to construct a double-track street surface road upon Stewart avenue, in that town. Prior to the 16th day of March, 1894, the plaintiff obtained the requisite consents in writing of the owners of the property bounded on that avenue, and subsequently the approval of the board of railroad commissioners of the state for the construction of its railroad on said avenue, to be oper-

ated by electricity. On May 22, 1894, a statute was enacted (chapter 758) providing for the laying out, construction, and maintenance. of a public driveway or parkway in any county of the state containing a city the population of which exceeds 800,000, and directing that for that purpose the mayor of the city should appoint commissioners to select and determine the driveway or parkway. By section 3 of the statute it was provided that, on the final confirmation by the mayor and certain other city officers of the plan and report adopted by the commissioners, the custody and control of any highway or public road included in the plan should vest in the department of parks of said city, and that no surface or elevated railroad should be constructed upon, along, or across such public road or highway. By section 9 the construction of any surface, depressed, or elevated road upon the driveway is prohibited. Acting under this authority, the mayor of the city of Brooklyn appointed commissioners, who laid out a parkway, which includes within its limits a part of Fifth avenue, upon which the plaintiff had been authorized to construct its railroad. The plan and report of the commissioners were confirmed, as required by the statute, on the 13th of March, 1895. Afterwards the plaintiff sought to lay its road in that part of Fifth avenue included within the parkway, when it was stopped by the defendants. Thereupon this action was brought to restrain the defendants from interfering with the plaintiff in the construction of the road. From an order granting an injunction pendente lite, this appeal is taken.

On obtaining the consent of the local authorities controlling the highway and those of the abutting property owners, the plaintiff acquired a franchise to construct and operate its railroad on the highway. This franchise was property of which the plaintiff could not be deprived without compensation. In People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, it was held that the franchise of the Broadway Surface Railroad Company to construct and maintain a railroad on Broadway could not be abrogated by the legislature. That case differs from the present one only in that the railroad company had there constructed its railroad before the legislature attempted to repeal its franchise. In Suburban Rapid-Transit Co. v. City of New York, 128 N. Y. 510, 28 N. E. 525, the plaintiff was organized through proceedings under the rapid-transit act of 1875. The line of its road passed through a tract of land which was subsequently designated as "St. Mary's Park," and acquired for that purpose by the city. At the time of the acquisition of the land by the city, the plaintiff had not constructed its railroad. The action was similar in its scope to that now before us. It was sought to enjoin the defendants from interfering with the plaintiff in the construction of its railroad. At the special and general terms the defendants succeeded, those courts holding that, as the plaintiff had not acquired title to the land on which its road was to be constructed, its franchise was merely inchoate, and therefore not protected against subsequent legislative action. The court of appeals reversed the judgments below, and held that the plaintiff was entitled to the relief demanded. In the opinion there delivered by Judge Gray it is said:

"The subsequent purchase or condemnation of the title to the lands, in the course of the railroad construction, was merely incidental, and was necessary in order to compensate property owners for the land taken, and to effect a transfer of the legal title. The right which the plaintiff acquired, to construct and operate the railroad upon the route described in its articles of association, lacked nothing for its efficacy or completeness. It had become an obligation, and was one of the unalterable conditions, and a fixed public feature of the corporate existence. When to it were subsequently added the consents of municipal authorities and of property owners, was any feature wanting to the fullest franchise in such respects? * * * How can a franchise so conferred by the legislature be deemed inchoate and defeasible? Is not its possession an element of the security upon which capital has been subscribed and loans have been made to the company? * * * In the case of the Broadway Surface Railroad (People v. O'Brien, 111 N. Y. 1, 18 N. E. 692), the corporate franchise, acquired under the authority of the legislature and the consents of the municipal authorities, to lay tracks and to run cars upon Broadway, was held by us to be a right indestructible by the legislature, and to constitute property in the highest sense of that term."

These decisions are conclusive on the question that the plaintiff's franchise, if complete and existing, was property which could not be destroyed by subsequent legislation, except by the exercise of the power of eminent domain, to which undoubtedly corporate franchises, as well as other species of property, are subject.

By the statement of facts already made, it appears that the last consents necessary to give to the plaintiff, under the constitution and the statutes, the right to build its railroad,—those of the abutting property owners,—were obtained as early as the 16th of March, 1894. The first parkway act was not passed until May 22, 1894, two months later. Though the affidavit fixes the time of obtaining these consents as early as March, 1894, in the complaint it is alleged that they were obtained prior to March, 1895. The appellants criticise the affidavit as being inconsistent with the complaint. This criticism is without force, as consents obtained in 1894 would be prior to March, 1895. But even if we should hold that the plaintiff, by the allegations of the complaint, was precluded from showing that the consents were obtained at an earlier date than that there named, it would not help the defendants. The statute of 1894 was a general statute. It did not designate or lay out the parkway. The location of the parkway became effective only when the report and plan of the commissioners were confirmed by the mayor and other officers; that is to say, on March 13, 1895, a time subsequent to that alleged in the complaint as the date before which the plaintiff had obtained all the requisite consents.

It is also contended that the franchises of the plaintiff have become extinct by its failure to complete the construction of its road within three years after obtaining the consents. There are two perfect answers to this claim. The first is that by the amendment of 1893 to section 99 of the railroad law noncompliance with these conditions of the grant does not ipso facto dissolve the corporation or determine its rights, but is only a ground of forfeiture,—a forfeiture which can only be adjudged in a direct proceeding brought by the state for that purpose. In re Brooklyn El. R. Co., 125 N. Y. 434, 26 N. E. 474; In re Kings Co. El. R. Co., 105 N. Y. 97, 13 N. E. 18. The second is that these very defendants, by their acts, have pre-

vented the plaintiff from constructing its road and complying with the provisions of the statute.

A further claim is made, based on the terms of section 108 of the railroad act of 1892. That provides: "No street surface railroad shall be constructed * * * in public parks, except in tunnels to be approved by the local authorities having control of such parks." Even if this section applied to the plaintiff's road, it would not justify the defendants in excluding it altogether from the driveway, as directed by the statutes of 1894 and 1896. But, plainly, it does not apply. It may first be said that the road here involved is not a park, but a "driveway" or "parkway." But, regarding it as a park, it was not laid out as a park at the time the plaintiff's franchise vested. The provisions of section 108 must be construed as limited to parks laid out or existing as such at the time of the acquisition of the franchise. If we held that it applied to parks laid out after that time, it would follow that every franchise acquired under the act might be practically abrogated and destroyed, without compensation, by laying out a park which should include the route of the railroad. Unquestionably, it is within the police power vested in the legislature to regulate the operations of railroads, and the exercise of such power would not be held to be a violation of the terms of its grant to the railroad company, or an illegal invasion of property. But, under the guise of regulation, the terms of the grant cannot be substantially modified and changed or the franchise abrogated. The franchise acquired by the plaintiff, under the law of this state, was a franchise to maintain a surface street railroad. To require the change of that railroad into an underground road, maintained in a tunnel, would not be a regulation of the mode of exercising the grant, but a vital change and modification of the grant itself.

We appreciate the injury that the construction of the plaintiff's road will inflict on the driveway, laid out at great expense to the community, and the inconvenience it may cause to the public using the driveway. But we are clear that the plaintiff has, under the settled law of this state, a property right in its franchise to construct a railroad on this road, from the enjoyment of which it cannot be excluded without compensation. If public necessity requires its exclusion, the result can easily be accomplished, either by purchase of its rights or acquiring them by condemnation; and, if the existing statutes are insufficient for this purpose, application must be made to the legislature.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.