(20 App. Div. 31.)

## CITY OF BROOKLYN v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department.   July 13, 1897.)

1. STREET RAILROADS—SPEED OF CARS—CONTRACT WITH CITY.
   The consent given by the city of Brooklyn to the construction of the road of the Nassau Electric Railroad Company, providing that the company might run its cars at such speed as to enable it to secure better and more speedy transit, but not to exceed 10 miles per hour, did not constitute a contract between the city and the railroad company that the latter should always have the right to operate its cars at a speed of 10 miles per hour.

2. SAME.
   It seems that the general railroad act prohibits a contract between a city and a street-railroad company to allow the latter always to operate its cars at a certain speed.

3. SAME.
   It seems that the regulation of the speed of street cars cannot be the subject of contract, either by the legislature or the common council of a city.

Appeal from Kings county court.

Action by the city of Brooklyn against the Nassau Electric Railroad Company.   From a judgment of the county court reversing a judgment of the justice of the peace for plaintiff, it appeals.   Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Joseph A. Burr, Corp. Counsel, for appellant.

Henry Yonge, for respondent.

CULLEN, J.    This action was brought to recover a penalty for the violation of an ordinance of the city of Brooklyn enacted in April, 1895, limiting the speed of street-railroad cars to six and eight miles an hour in certain prescribed portions of the city.   The case does not differ from that of City of Brooklyn v. Brooklyn City & N. R. Co., 11 App. Div. 168, 42 N. Y. Supp. 371, but the respondent raises a point not considered in the former case.   The consent given by the city on June 30, 1893, to the construction of the defendant's road, which, both by the constitution and the statute (chapter 565, Laws 1890), was a prerequisite to the acquisition of a complete franchise to build a street railroad, contained this provision:

"In the operation of its cars by electric power the said company may run them at such speed as shall enable it to secure to the public the advantage of better and more speedy transit, with due and proper regard to the safety of others using the public streets, but such rate shall in no instance exceed ten miles per hour."

It is now claimed that this condition constituted a contract with the defendant that it should always thereafter have the right to operate its cars at the rate of 10 miles an hour.

First. We think this is not the true construction of the consent. In Union Pass. Ry. Co. v. Philadelphia, 101 U. S. 528, the appellant was incorporated under a special statute, which provided: "The said company shall also pay such license fee for each car run by said company as is now paid by other passenger railway companies in the city of Philadelphia."   At that time the license fee was $30.   By

a subsequent statute it was enacted that the license fee for all com-- panies in the city of Philadelphia should be $15. The defendant claimed that its charter constituted a contract by which it was com- pelled to pay only $30 a car, and that the subsequent statute could not impair its rights. The supreme court of the United States held that this contention could not be sustained. It was there said (page 535):

"The language of the act of incorporation does not amount to a contract of any kind, and certainly not to such a contract as that set up by the defend- ants, * * * but it is plain that there is nothing in the language of the sec- tion to warrant the court in holding that the legislature intended to contract that the license charged for such passenger cars should never exceed the an- nual sum of thirty dollars."

Second. The railroad act itself would seem to prohibit any such contract by the common council, for by section 98 it is enacted: "Such authorities [proper local authorities] may make such reasonable regu- lations and ordinances as to the rate of speed, mode of use, and tracks as the interest or convenience of the public may require." This power is plainly continuous, and one common council could not bargain away the right of its successors to exercise the power.

Third. We very much doubt whether the regulation of the rate of speed of cars in streets and highways could be the subject of con- tract, either by legislature or common council. It is settled law that the police power "extends to the protection of the lives, health, and property of the citizens, and the preservation of good order and morals. The legislature cannot, by any contract, devest itself of the power to provide for these objects." Beer Co. v. Massachusetts, 97 U. S. 25; Fertilizing Co. v. Hyde Park, Id. 659; Butchers' Union Slaughter- House Co. v. Crescent City Live-Stock Landing Co., 111 U. S. 746, 4 Sup. Ct. 652. See Grade-Crossing Case (New York & N. E. R. Co. v. Town of Bristol) 151 U. S. 557, 14 Sup. Ct. 437. The case of City of Burlington v. Burlington St. Ry. Co., 49 Iowa, 144, relied on by the plaintiff's counsel, is not in point. It was there held that the city, having under proper authority granted the defendant the right to construct a double-track road on certain streets, a subsequent or- dinance forbidding the construction of more than a single track on those streets was invalid. This court has held that, where a high road, upon which a company has acquired a valid and complete fran- chise to construct a street-surface railroad, was incorporated into a parkway, the company could not be deprived of its franchise, or compelled to construct its railroad for the whole length of the high- way through a tunnel. Railroad Co. v. Kennedy (not yet officially reported) 44 N. Y. Supp. 825. A franchise to construct and maintain a railroad is property. The legislature, by the grant or creation of such property, does not impair or limit the exercise by it of the police power. The presence of railroad cars on a highway may to some extent obstruct travel, the same as that of other vehicles, but of it- self does not imperil life or limb. But an excessive rate of speed of any vehicles may constitute a serious menace to both. It is as much the duty of the legislature to protect the traveler from unneces- sary danger to his person while on the highway, as his health from

infection while in his house, and we think the power to perform neither obligation can be contracted away.

The judgment of the county court should be reversed, and of the justice of the peace affirmed, with costs.   All concur.