Order reversed, with $10 costs and disbursements, and motion granted, with costs. All concur, except HOOKER, J., not voting.

---

### In re BROOKLYN, Q. C. & S. R. CO.

(Supreme Court, Appellate Division, Second Department.  June 9, 1905.)

STREET RAILROADS—EXTENSION OF LINE—FRANCHISE—EXPIRATION—STATUTES.

Railroad Law (Laws 1890, p. 1084, c. 565) § 5, provides that, if any domestic railroad corporation fails to begin the construction of its road within five years after the certificate of incorporation is filed, its corporate existence and powers shall cease; and section 99, art. 4, p. 1112, which article is entitled "Street Surface Railroads," provides that in case such corporation shall commence the construction of its road, or any extension thereof, within one year after the consent of the local authorities and property owners, and shall not complete the same within three years, its rights may be forfeited. *Held*, that where a street railroad company was granted a franchise to construct an extension, but it failed to commence such construction within five years, its rights were lost, ipso facto, under Railroad Law, § 5, the same being self-executing.

Appeal from Special Term, Queens County.

Mandamus, on the relation of the Brooklyn, Queens County & Suburban Railroad Company, to compel Martin W. Littleton, as president of the borough of Brooklyn, and others, to grant a permit to open a certain street, in order to construct a street surface railroad, and from an order denying the application relator appeals. Affirmed.

See 92 N. Y. Supp. 1117.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and RICH, JJ.

Charles A. Collin (John L. Wells and William F. Sheehan, on the brief), for appellant.

James D. Bell, for respondent.

WILLARD BARTLETT, J.  In 1893 the Broadway Railroad Company, since merged in the Brooklyn, Queens County & Suburban Railroad Company, obtained from the common council of the city of Brooklyn its consent to the construction, maintenance, and operation of a double-track street surface railroad upon an extension in Saratoga avenue from Broadway to the city line. The requisite consents of one-half of the owners in number, and of the

owners of one-half in value, of the property on Saratoga avenue, which were necessary to complete the franchise for the construction of the extension on Saratoga avenue, were not all obtained until 1903. Having obtained such consents, the railroad company on September 30, 1903, applied to the commissioner of public works in the borough of Brooklyn for a permit to commence the construction of its extension on Saratoga avenue. The application was denied. The railroad company thereupon instituted this proceeding to compel the issue of the desired permit, but the court at Special Term has refused to command its issue. The only paper read in opposition to the application was an affidavit from Mr. John C. Breckenridge, the commissioner of public works in the office of the president of the borough of Brooklyn. This affidavit states that Public School No. 137 is located on Saratoga avenue, where it is proposed to construct the trolley railroad under the permit asked for, and states that the affiant and the president of the borough have received a large number of protests against the building and operating of the railroad in front of said school, which protests emanated from the board of education, and from private persons who were interested in the safety of the children attending said school. The learned judge at Special Term intimated that the presence of a schoolhouse in this locality would not warrant the city authorities in refusing the necessary permit to open the street, inasmuch as they should have considered the fact that the claim to the franchise existed before determining to build the school there. In this view he was clearly correct, so that the only question that it is necessary to consider upon this appeal is a question of law, to wit, whether the delay of the railroad company in obtaining the consent of the property owners to the construction of its extension on Saratoga avenue has operated to prevent it from now being entitled to build and operate such extension.

It is to be observed that a period of more than 10 years elapsed between the time when the Broadway Railroad Company of Brooklyn, since merged in the Brooklyn, Queens County & Suburban Railroad Company, obtained the consent of the municipal authorities to the construction of this proposed extension in Saratoga avenue, and the time when it obtained the last of the consents necessary to make up the number and amount required by law. Has the franchise to construct this extension, otherwise in all respects valid, been destroyed by this lapse of time? The learned judge who heard this case at Special Term answered this question in the affirmative; holding that the proposed extension was a new road, and that the railroad company was bound to begin its construction within five years from the time when it obtained the consent of the municipal authorities. This view must have been based upon the conclusion that section 5 of the railroad law was applicable to the appellant. Laws 1890, p. 1084, c. 565. That section provides that if any domestic railroad corporation shall not begin the construction of its railroad within five years after its certificate of incorporation is filed, or shall not finish its road within ten years therefrom, "its corporate existence and powers shall cease." A

statutory provision of essentially the same character has been held by the Court of Appeals to be self-executing. Matter of B., W. & N. Railway Co., 72 N. Y. 245; Id., 75 N. Y. 335; Brooklyn Steam Transit Co. v. City of Brooklyn, 78 N. Y. 524. Referring to the decision of this court in Brooklyn & Rockaway Beach R. Co. v. Long Island R. Co., 72 App. Div. 496, 76 N. Y. Supp. 777 (appeal dismissed 178 N. Y. 593, 70 N. E. 1096), the Special Term judge was evidently of the opinion that section 5 of the railroad law operated pro tanto to destroy an extension franchise not acted upon within the prescribed period, although leaving the corporation alive in respect to those portions of its road which had been constructed within the statutory period. I think that he is right in this view, if section 5 applies at all at the present time to the case of a street surface railroad. It seemed at first somewhat doubtful whether that section now has any such application. Section 99 of the railroad law, which is found in article 4, p. 1112, thereof, which article is entitled "Street Surface Railroads," provides that in case any such corporation shall not commence the construction of its road, or of any extension or branch thereof, within one year after the consent of the local authorities and property owners, or the determination of the General Term shall have been given, and shall not complete the same within three years after such consents, its rights, privileges, and franchises in respect to such railroad extension or branch, as the case may be, "may be forfeited." This provision is not self-executing. Coney Island, Ft. Hamilton & Brooklyn R. Co. v. Kennedy, 15 App. Div. 588, 44 N. Y. Supp. 825 (opinion per Cullen, J.). Occurring as it does in an article devoted solely to the subject of street surface railroads, the question suggested itself whether this section 99 of the railroad law might not be regarded as a substitute for section 5, so far as this class of railways is concerned. Upon that question the court ordered the reargument upon which the appeal has now been finally submitted. That reargument has resolved our doubts adversely to the contention of the appellant.

The statute under consideration in the Matter of Brooklyn, Winfield & Newtown Railway Co., 72 N. Y. 245, was chapter 775, p. 1903, of the Laws of 1867, being an act to amend the General Railroad Law of 1850 (Laws 1850, p. 211, c. 140). It consisted of but a single section, reading as follows:

"If any corporation formed under an act entitled 'An act to authorize the formation of railroad corporations, and to regulate the same,' passed April second, eighteen hundred and fifty, shall not, within five years after its articles of association are filed and recorded in the office of the Secretary of State, begin the construction of its road, and expend thereon ten per cent. on the amount of its capital, or shall not finish its road and put it in operation in ten years from the time of filing its articles of association, as aforesaid, its corporate existence and powers shall cease."

The first clause of section 5 of the railroad law, as in force at the time when the consent of the municipal authorities was obtained by the appellant, and as now in force, provides as follows:

"When Corporate Powers to Cease. If any domestic railroad corporation shall not within five years after its certificate of incorporation is filed, begin

the construction of its road and expend thereon ten per centum of the amount of its capital, or shall not finish its road and put it in operation in ten years from the time of filing such certificate, its corporate existence and powers shall cease."

It will be seen that there is no essential difference between this clause of section 5 and chapter 775, p. 1903, of the Laws of 1867. As the latter statute was held by the Court of Appeals to be self-executing in the case cited, so the first clause of section 5 must also be regarded as a provision which executes itself. In the Brooklyn, Winfield & Newtown Railway Company Case, the act of 1867, above quoted, was applied not to a steam railroad company, but to a street surface railroad company, partly in the city of Brooklyn, and extending to Winfield and the village of Newtown. This appears by chapter 718, p. 1735, of the Laws of 1869, which authorized the corporation then known as the Brooklyn & Winfield Railway Company, and afterwards known as the Brooklyn, Winfield & Newtown Railway Company, to construct, operate, and maintain a railroad with single or double tracks and necessary switches and turnouts, "propelled by horse power," over the route named in its articles of association. The first clause of section 5 of the existing railroad law is evidently based upon, and is essentially the same in effect as, chapter 775, p. 1903, of the Laws of 1867; and it is difficult to perceive any sufficient reason why, if the act of 1867 was applicable to the case of a street surface railroad, and operative, of its own force, and without any judicial action, to destroy the corporate franchise of such a railroad, the first clause of section 5 should not be construed to be capable of the same application and effect. Unless that clause does apply to street surface railroads, there would seem to be no self-executing provision of law under which their corporate existence can be terminated. At all events, no such provision has been brought to our attention. As has been pointed out, section 99 of the railroad law is not self-executing, but requires the institution of legal proceedings to give it effect. This difference between that section and the first clause of section 5 removes all difficulty in the way of permitting the provisions of both to stand together. One enactment prescribes the conditions under which the authorities of the state may go into court and ask that a franchise may be judicially declared to be forfeited. The other enactment declares under what circumstances such corporate franchise becomes ipso facto forfeited without any judicial proceedings whatsoever.

Our conclusion is that, by virtue of the operation of the first clause of section 5 of the railroad law, the appellant lost its franchise to construct the Saratoga avenue extension at the expiration of five years from May 28, 1893. As to the various statutes relied upon by the appellant as operative to enlarge the time within which it might construct this Saratoga avenue extension, it is sufficient to say that, upon a fair and reasonable construction, none of them seems to us to have had that effect. Chapter 700, p. 468, of the Laws of 1895, by its title, expressly excluded street surface railroads from its scope and operation; and we do not think that the

Legislature intended to abrogate the effect of that title by the subsequent amendments of the same act. The extensions of time granted by amendments to the general railroad law enacted since 1898 can hardly have been designed to revive franchises already dead by reason of the operation of a self-executing general statute.

The order of the Special Term should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.