PUBLIC SERVICE COMMISSION FOR THE FIRST DISTRICT, Petitioner, v. RICHMOND LIGHT AND RAILROAD COMPANY, Defendant.*

(Supreme Court, Richmond Special Term, November, 1916.)

*Mandamus — will not lie to compel construction and operation of railroad where defendant's rights so to do are doubtful — Public Service Commissions Law, § 57.*

APPLICATION under section 57 of the Public Service Commissions Law for a writ of mandamus to compel the defendant to construct and operate a street surface railroad on Richmond road or old stone road, between Bulls Head and New Springville and Richmond Turnpike between Bulls Head and Linoleumville, on Staten Island.

George S. Coleman and H. M. Chamberlain, for petitioner.

Lewis H. Freedman, for defendant.

KELLY, J. The street surface railroad now operated by defendant was constructed by the Staten Island Electric Railroad Company as far as Bulls Head in August, 1897. This application seeks to compel construction and operation of additional railroad over one highway from Bulls Head to New Springville, a distance of about seven-eighths of a mile, and over

---

* Affirmed by the Appellate Division, Second Department, June 6, 1919, on the opinion below.— [REPR.

another highway from Bulls Head to Linoleumville, a distance of two and five-eighths miles, upon the ground that the defendant's franchise runs to the points named, and it is charged that in failing to construct and operate to these points it is violating the law and that mandamus under section 57 of the Public Service Commissions Law is the proper remedy to compel such construction and operation. The defendant denies that it has any franchise or right to build or operate a railroad beyond Bulls Head, which has been its terminus for nearly twenty years, and denies any obligation on its part to so construct or operate the additional street surface railroad.

The Court of Appeals has recently decided that, while mandamus under section 57 of the Public Service Commissions Law may be an appropriate process for the purpose of having violations or threatened violation of anything required of a common carrier by law or by order of the commission "stopped and prevented," and while the requirements so directed by mandamus may be continuous, still upon application made under section 57, responsibility is expressly placed upon the court to determine what action shall be taken by it on such application. *Public Service Commission* v. *Interborough R. T. Co.,* 219 N. Y. 355.

The franchise, exercise of which the petitioner seeks to compel in this proceeding, if it ever existed, is more than twenty years old. It has never been exercised so far as the construction and operation of a railroad beyond the Bulls Head terminus is concerned. The consents of the municipal authorities of the old town of Northfield in Richmond county to the construction and operation of the railroad between Bulls Head and New Springville and between Bulls Head and Linoleumville were granted February 8, 1896. The piece of railroad between Bulls Head and New Springville was part of one route coming up from Port Richmond

and which was constructed and operated as far as Bulls Head in 1897. The railroad between Bulls Head and Linoleumville was part of another route running along Richmond turnpike from Clove road to Linoleumville, crossing the first route at right angles at Bulls Head; only a small part of this route was ever constructed, up at the extreme northerly end in Castleton. These routes were not specified in the certificate of incorporation of the original railroad company to which the franchise was granted, but were two of seven extension routes for which the original railroad company filed certificates of extension in 1896, following the procedure of many street railroads outside New York county immediately before consolidation. The consent or franchise was not granted to the defendant, but to the Staten Island Electric Railroad Company. The defendant is not the successor of that corporation, in the sense that it is a reorganization of the old company or the result of consolidation of railroad companies. The defendant was originally an electric lighting company originated in 1902, and which later filed an amended certificate of incorporation under the Railroad Law (section 21 of the present Railroad Law) which permitted it to acquire the property and franchise of a railroad not exceeding twenty-five miles in length, already constructed and operated and to maintain the same. The amended certificate filed by defendant to accomplish this object as required by the statute covered simply the route of the old railroad then constructed and operated. So far as the present controversy is concerned, the railroad terminated at Bulls Head and defendant has never extended or attempted to extend the route.

On the hearing of the application for mandamus, there was a rather full discussion of the law between counsel and the court, all of which appears in the stenographer's minutes, and it is unnecessary for me

to repeat here the views there expressed. I seriously doubt whether defendant has any franchise to construct or operate this new railroad to Linoleumville, or to Springville. If the defendant to-day applied for a mandamus to compel the authorities of the city of New York to grant a permit to open the streets for the purpose of constructing this additional railroad, on these new lines, the court, in my opinion, would be obliged to deny it under *Matter of Brooklyn, Queens County & Suburban R. Co.*, 185 N. Y. 171. I tried that case at Special Term, and the refusal of the mandamus was affirmed by the Appellate Division (106 App. Div. 240) and the Court of Appeals. It was there held that the railroad company had forfeited its right to construct and operate a certain extension of its railroad over the streets of the city, because of non-user.

The position of the railroad in the case cited was much better than that of the defendant here. Because in this case, in my opinion, not only is the franchise on the unconstructed route dead, if it ever existed, by the express limitations contained in the franchise, and by the forfeiture clause in the general law, but there is no proof or suggestion that the defendant here has the necessary consents of the property owners along the new line of railroad, or that such consents were ever granted to any corporation.

The consent of the town of Northfield granted in February, 1896, to the original street railway company never availed of, so far as the extension along Richmond Turnpike from Clove road to Linoleumville as well as the consent to the construction between Bulls Head and New Springville, had, in my opinion, lapsed and become extinct before chapters 494 and 508 of the Laws of 1901, which the petitioner cites, were in effect. Again the extension route from Port Richmond to New Springville, partly operated to Bulls Head, and the route from Clove Road to Linoleumville, are entirely

separate routes; they cross at right angles at Bulls Head. As has been stated, these routes were not mentioned in the original certificate of incorporation of the Staten Island Electric Railroad Company. They are not mentioned in the certificate of incorporation of the defendant, nor has the defendant at any time filed any certificate of extension covering these routes. The defendant, under the law, purchased a railroad constructed and in operation at the time of the purchase. There appears to have been an abandonment of these extensions during all these years.

To say that after the lapse of twenty years the court should compel by mandamus the construction and operation of an entirely new railroad across the marshes from Bulls Head to Linoleumville on the strength of a franchise granted in 1896, which contained an express agreement that all rights thereunder would be forfeited if the railroad was not built in one year, seems to strain the old ideas of the functions of the writ of mandamus to the breaking point. I cannot conceive of any answer to the complaint of a property owner along these highways, for an injunction restraining the construction and operation of a street railroad because of lack of franchise. And if the city of New York under modern municipal conditions insisted that this twenty-year old franchise granted without any provision for compensation for the use of the street by the corporation, so far as I can ascertain from reading it, was now of no avail, and that the new conditions demanded compensation to the public, and the enforcement of the various rules and regulations now applicable to street railroad operation, how could the railroad maintain its right to occupy the public highway against the objection of the city?

I do not think this is a case for mandamus. If the court can compel the construction and operation of this two and five-eighths miles to Linoleumville, it

can equally compel a railroad corporation to build and operate one hundred miles of railroad. While, under section 57, there is no limitation on the power of the court even in the extreme case suggested, it emphasizes the importance of the application of the principle that the obligation and duty compelled by mandamus must be plain and unmistakable. It must not be subject to doubt. It must be a duty and obligation, performance of which, when directed by this most powerful writ, can be enforced. It is doubtless true that the old objection to mandamus, that the party complainant could enforce his rights by action at law, is not a sufficient answer in a case of this kind, where the public service commission seeks to compel the performance of a public duty in which the public are interested. And I must assume that the petitioner here is acting in behalf of the public, although there is some suggestion that a recently established ferry between Linoleumville and Carteret in the state of New Jersey is largely interested in this application.

But the desirability or necessity of summary action by way of mandamus does not justify the court in losing sight of the basic principles governing the issuance of writs of mandamus. The writ should not issue where it is apparent that parties not before the court may have rights affected by its issuance upon which they are entitled to hearing. Because it would be an idle thing to attempt to compel by mandamus an act which can be enjoined at the suit of a party not before the court in the mandamus proceeding.

The old remedy for failure to comply with the terms of a public franchise to, operate a railroad in whole or in part was an action by the attorney-general to forfeit the franchise, and as I said on the trial, a railroad corporation must comply with the terms of the franchise as an entirety. It must take the fat with the lean. It cannot avail itself of the desirable part of the route

which it is authorized to construct and operate, and abandon what it may conceive to be the undesirable or unprofitable portion. All this is sound law, and could be applied in the old method of action for forfeiture. I am not determining here whether such action should be brought, or that such action might result in forfeiture of the entire franchise, and terminate the operation of the existing railroad. I think this last suggested possibility is extremely remote. Each of these so-called extensions of the Staten Island Electric Railroad Company appears to have been a distinct and separate route under *People ex rel. Brooklyn, Q. Co. & S. R. R. Co.* v. *Steers,* 158 App. Div. 153, and failure to build one would not necessarily forfeit all. But this is not the question now before the court, because, as I have already suggested, the right of the public service commission to enforce legal duties, and to prevent violation of law by mandamus under section 57 is established and salutary, and cannot be defeated because the attorney-general may have the right to institute forfeiture proceedings.

I have been referred to the decision of Judge Page, at Special Term in New York county, in *Public Service Commission* v. *New York Railways Co.,* 77 Misc. Rep. 487, where that learned judge, for whose opinion I have the greatest respect, sums up the reason for the rule that mandamus is a proper remedy. But it is apparent from reading the opinion in the *One Hundred and Sixteenth Street* case, that there was no question about the validity of the franchise of the defendant in that case to operate its road, and the court in no way suggests in the opinion that if the right of defendant to construct or operate was in dispute, mandamus should issue.

The language of the Court of Appeals speaking through Chief Judge Cullen in *City of New York* v. *Bryan,* 196 N. Y. 158, appears directly applicable to

the situation in the case at bar. "However that may be, the legal status of that franchise and the rights of the defendants, or the company to which they succeeded, to the property and structures created in the execution of the franchise, should be determined only in a litigation between the people of the state, from whom the franchise sprang, and the defendants, wherein a determination will be binding and conclusive on everybody, and not in a suit between the defendants and third parties, unless it is absolutely necessary so to do."

I, therefore, think that the petitioner has failed to make out a case for mandamus, for the reason that the legal right of the defendant to construct and operate a railroad in the highways in question, and its corresponding duty to so construct and operate a railroad, are, to say the least, extremely doubtful.

1. Because the franchise from the town of Northfield has been forfeited for non-user, as to these particular pieces of railroad construction, by the express terms of the franchise itself and by the provisions of the Railroad Law.

2. Because it is doubtful, on the facts in this case, whether in any event, any legal obligation rested on the defendant, the former electric light company, to operate any railroad beyond the railroad "already constructed and operated" at the time of the purchase of the railroad of the former company in 1902, the defendant never having filed any certificate of extension.

3. Because the franchise or consent on which this application is based was granted in February, 1896, that it has never been exercised as far as these new lines are concerned, and that in the past twenty years new conditions have arisen and the territory has become part of Greater New York, and new and modern methods are applicable to new street railroad con-

struction and operation and to compensation for the use of highways for railroad operation, making the great lapse of time, more than twenty years, in demanding enforcement, a most serious obstacle to the remedy by mandamus.

4. Because the city of New York and the property owners along the new route are not before the court in this proceeding, and there is no proof that the city or the property owners have given their consent or will give their consent to this new railroad construction and operation.

For these reasons, the application for mandamus must be denied.

Application denied.