KENT v. COMMON COUNCIL OF CITY OF BINGHAMTON et al.

(Supreme Court, Appellate Division, Third Department.   May 4, 1904.)

1. STREET RAILROADS—CHARTERS—FORFEITURE.
Where a franchise was granted by the Legislature to a street railroad corporation on condition that it complete its road within a certain time, but, though the road was not completed within the time prescribed, no forfeiture was declared on behalf of the state, but, on the contrary, a special act was passed providing that the time within which a railroad succeeding to such franchise should finish their roads and put them in operation should be extended until 1905, and no prejudice to the corporate existence and powers of the respective companies included in the consolidated company under their respective charters should arise on account of their noncompletion or operation of the roads within the time prescribed, such unused franchise could not be forfeited at the suit of an abutting owner for the railroad's failure to complete the line within the time prescribed.

2. SAME—EXTENSION OF TRACKS—PAVING—LIABILITY OF RAILROAD COMPANY.
Defendant street railroad company contracted with the city for exemption from liability for paving streets where its tracks were laid, and thereafter consolidated with another company, the franchise of which included the right to lay tracks on C. street.   This franchise had never been used, and the city had given a similar right to a third company, which laid and operated a single track on that street, which was also thereafter consolidated with defendant.   Defendant tore up the single track and laid a double track, which was operated in connection with its other line.   In an action by an abutting property owner to enjoin the collection of an assessment for paving C. street defendant claimed that it was exempt, and that its rights in such street were derived from its purchase.   The court, however, held that the contract did not apply to rights acquired by such purchase, after which defendant obtained leave to amend, and pleaded that the double tracks on C. street were laid under the disused franchise, and introduced proof of such fact.   *Held*, that the tracks laid on such street, being constructed under such franchise should be treated as an extension of defendant's line, and were therefore covered by the contract with the city.

Appeal from Special Term, Broome County.

Action by George A. Kent against the common council of the city of Binghamton and the Binghamton Railroad Company.   From a judgment in favor of plaintiff, defendants appeal.   Reversed.

This action has been tried three times.   The facts, except as they are stated in this opinion, will be found stated in the opinions written on the former appeals herein.   Kent v. Common Council, 61 App. Div. 323, 70 N. Y. Supp. 465; Id., 72 App. Div. 623, 76 N. Y. Supp. 584.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Frank Stewart, for appellant common council of the city of Binghamton.

Curtiss, Arms & Keenan (Charles A. Collin, of counsel), for appellant the Binghamton Railroad Company.

Carver & Deyo (D. H. Carver, of counsel), for respondent.

CHASE, J.   After the reversal of the first judgment the defendants materially changed their contention, and after the reversal of

the second judgment they materially amended their answers, and any apparent confusion in the opinions of this court is attributable thereto.

This court on the second appeal, referring to the first appeal, said:

"When this case was before us on the former appeal, the question presented was whether this defendant was relieved by the provisions of the contract of April 26, 1892, from paving between the rails, etc., as is required by the provisions of the general railroad law (Laws 1890, p. 1112, c. 565, § 98, as amended by Laws 1892, p. 1382, c. 676). The argument of the defendant the Binghamton Railroad Company then was that it was a company with which the parties of the first part to that contract had become merged and consolidated, and that, therefore, by its express terms, the contract inured to its benefit; and, further, that the tracks over which this controversy arises, viz., those then operated by the Court Street & East End Railroad Company, were an 'addition or extension' of the tracks of such contracting companies, and that, therefore, the terms and conditions of such contract by its express provisions applied to them. We then held that the benefits which were to inure to the successors and assigns of the contracting companies, or to one with which they might thereafter consolidate, were no broader than were thereby given to such companies themselves, and that very clearly the exemption or modification of the statutory liability so given did not extend beyond the track then being operated by them, or to such additions or extensions of those tracks as might thereafter be made; and that, conceding that such exemption would inure to the benefit of this defendant railroad company as a company with which those contracting companies had consolidated, nevertheless, inasmuch as the tracks in question had subsequently to the contract been acquired from a separate and independent company by such defendant, and were therefore tracks not then used by such contracting companies, nor ones as to which either of them had any interest or owed any duties, that they could not be deemed extensions or additions to the tracks referred to in the contract, and hence none of the provisions of such contract should be deemed applicable thereto. That conclusion resulted in depriving the defendant railroad company of any advantage under such contract as to the tracks in question, and required a new trial. No suggestion was then made that either of the contracting companies had any interest in the tracks then operated by the Court Street & East End Railroad Company, or in its line, or any rights under its own charter to extend its tracks over any part of that line; and all of the rights which this defendant company then claimed over the tracks in question were claimed in its answer to have been derived by consolidation with the Court Street & East End Railroad Company."

The Binghamton & Port Dickinson Railroad Company was incorporated by chapter 501, p. 1042, of the Laws of 1868, and by such act it was authorized and empowered to lay, construct, operate, and use a railroad with a double or single track, at their option, or as the public convenience may require, and to convey passengers or freight thereon for compensation through, upon, and along certain streets of the city and town of Binghamton, which included Court street. Said act provides that said road shall be commenced within one year from the passage of the act, and shall be completed within five years from the time of the commencement of the building of the same. The time for the commencement of said road was expressly extended to May 1, 1872, by subsequent acts of the Legislature. Said Binghamton & Port Dickinson Railroad Company built and operated a railroad upon certain of the streets named in said act of incorporation, but did not build a road through that part of Court street in question prior to its consolidation with another railroad company, nor prior to the consolidation of such consolidated company with the Court Street & East End Railroad Company. In 1886 the

Court Street & East End Railroad Company organized under the general act, Laws 1884, p. 309, c. 252. In the certificate of incorporation of said Court Street & East End Railroad Company the streets and highways in which the road is to be constructed are enumerated, and included in the streets and highways so enumerated is said Court street. Said certificate of incorporation does not state whether a single or double track road is to be built upon said street.

After the incorporation of the Court Street & East End Railroad Company, it built in the center of said Court street a single-track street railroad for use with animal power. It was so continued and used with horse power until after its consolidation with the defendant railroad company, and it was so in use at the time of the execution of the contract of April 26, 1892. Subsequent to 1894 and the consolidation of said Court Street & East End Railroad Companies with said other railroad companies a large number of the property owners on said Court street petitioned said common council to authorize the defendant company to construct and maintain a double-track road on said Court street, and said common council passed a resolution as follows:

"Whereas, the abutting property owners of Court street, east of its intersection with Exchange street, almost unanimously petition this body to grant the Binghamton Railroad Company permission to lay double track from the point above mentioned through Court street east to the city limits, believing, as the petition states, that public interest demands increased street car facilities for the eastern portion of the city, and that a double-track system from the extreme western limit to the extreme eastern limit of the city through the principal thoroughfare is a necessity and improvement benefiting the city at large: Therefore be it resolved that the Binghamton Railroad Company are hereby granted the right and privilege to construct and maintain a double track from the eastern terminus of the present double track near the intersection of Exchange street along and through Court street in an easterly direction to the city limits, except underneath the railroad bridge over said street."

Thereafter the track formerly owned and used by the Court Street & East End Railroad Company was removed, and two tracks, one on either side of the center of said street, were laid by the defendant company with girder rails, and they have since been maintained as a part of the defendant company's electric railway system.

On the hearing of the second appeal the defendants claimed that the defendant company maintained said road on Court street under the original charter of the Binghamton & Port Dickinson Railroad Company, and that, as the Binghamton & Port Dickinson Railroad Company was one of the parties to the contract of April 26, 1892, it was, by the express terms of said contract, exempt from paying for any part of said paving except as provided for by said contract. By the answers of the defendants as they remained until after the decision of the appeal from the second judgment, it was claimed that the rights of the defendant company over the street in question were derived from its consolidation with the Court Street & East End Railroad Company.

The original contention of the defendants was limited to showing (1) that the contract of April 26, 1892, was a valid contract, and (2) that such contract applied to streets where roads had been built by

companies that had subsequently consolidated with the contracting companies. The claim of the defendants on the second trial and appeal that the defendant company was maintaining its road on that part of Court street in question by virtue of the original charter of the Binghamton & Port Dickinson Railroad Company was wholly inconsistent with the answers as they then stood. This court then held that upon the pleadings in the case it stood admitted that the right to maintain tracks on Court street belonged to the defendant company by reason of the same passing to it from the Court Street & East End Railroad Company, and that the facts presented on the trial were not sufficient to overcome the express admission in the answers. After the decision of the second appeal an application was made to the court by the defendant railroad company to amend its answer, which application was opposed. It was granted by the court on terms, which terms were complied with, and thereafter an amended answer was served by both defendants, in which amended answers it is expressly alleged that by the consent of the common council of the city of Binghamton the Court Street & East End Railroad Company had a right to build only a single-track road on Court street; and it is also therein further expressly alleged that the double-track railroad on that part of Court street in question was not constructed under nor by virtue of the franchise of the Court Street & East End Railroad Company, but solely and only by virtue of the franchise of the Binghamton & Port Dickinson Railroad Company.

On second appeal, this court, after holding the defendants to the admissions contained in their answers, said:

"Under this view it does not become necessary to determine whether the Binghamton & Port Dickinson Railroad Company had at the time of the contract any rights left over the street in question, nor whether, under the conditions as they then existed, the contract should be construed to include the possible right of such company to oust the Court Street & East End Railroad Company, and extend its own tracks over a street so occupied by such other company."

Now, however, with the answers amended as stated, it is necessary to determine such question. The charter of the Binghamton & Port Dickinson Railroad Company came directly from the Legislature, and it is exclusive and wholly unconditional, except so far as it provides that the road shall be commenced and completed within the time in the act mentioned. The option mentioned in the act does not in any way relate to the streets upon which the company is authorized and empowered to construct and operate a railroad, but it refers to the determination of the question as to whether a double or single track road is to be so constructed and operated. The act does not provide a penalty or forfeiture of any kind in case of the failure of the company to commence or complete the building of said road within the time in the act mentioned. Where a franchise is granted to build a railroad, it imposes upon the company to which it is granted an obligation to build the road, as well as confers upon it the right to so build the same. The failure to commence to build the road or to complete the same within the time provided by the

act of incorporation does not work an actual forfeiture or loss of its corporate powers, rights, or privileges unless such forfeiture and loss is declared by the act of incorporation in unmistakable language (Matter of N. Y. & L. I. Bridge Co. v. Smith, 148 N. Y. 540, 42 N. E. 1088), or by a subsequent act of the Legislature or by a court of competent jurisdiction.

The Court of Appeals in People v. Albany & Vermont Railroad Company, 24 N. Y. 261, 82 Am. Dec. 295, say:

"A corporation is under a legal obligation to exercise its franchises, and it has not the option to discontinue a part of its road and forfeit its franchises."

In the matter of B. E. R. R. Co., 125 N. Y. 434, 26 N. E. 474, the court say:

"By such nonperformance a corporation is not ipso facto dissolved, or deprived of its corporate existence or corporate rights, but it is simply exposed to proceedings on behalf of the state to establish and enforce the forfeiture. The state, which gave the corporate life, may take it away. The state, which imposed the conditions, may waive their performance, and the corporate life may run on until the state, by proper proceeding, intervenes and enforces the forfeiture. Until the state does thus intervene, a private individual cannot set up the forfeiture, or in any way challenge the corporate existence with its full vitality. The authorities for these views are numerous and uniform both in this country and England."

See Coney Island, F. H. & B. R. R. Co. v. Kennedy, 15 App. Div. 588, 44 N. Y. Supp. 825; S. R. T. Co. v. Mayor, etc., of New York, 128 N. Y. 510, 28 N. E. 525.

In the recent case of Paige v. Schenectady Railway Company, 178 N. Y. 102, 70 N. E. 213, it was claimed by the plaintiff that a consent previously given by her to the building of a street railroad in the street adjoining her property had been forfeited and nullified by reason of the fact that the receiver of the corporation whose rights and franchises had been purchased by the defendant had, while such receiver, abandoned that portion of said railroad adjoining the plaintiff's property, and that the common council of the city of Schenectady had, on petition of abutting owners, by resolution expressly authorized the permanent abandonment of such portion of said street railroad. Such abandonment was acquiesced in for a period of about eight years, and then the defendant attempted to rebuild said street railway thereon, and commenced proceedings de novo for the purpose of obtaining the right so to do. In an action by the plaintiff, an abutting owner, to restrain the rebuilding of such road, the court say:

"We can discover no principle upon which the receiver had a right to abandon any of the property belonging to such railway company without the consent of the company, of its stockholders, and the consent of the Legislature of the state. Nor was the common council clothed with any authority to compel or to authorize an abandonment of any portion of such street railway. While its consent might possibly waive any right the city possessed to enforce or compel the enforcement of a continued operation of the road, still it certainly could not, by any action upon its part, deprive the railway company of its rights, affect the rights of the stockholders or the rights of the state and general public to require the company to continue the maintenance and operation of its road as originally constructed. * * * Nor did the removal of the tracks by the receiver determine or forfeit the franchise of the

original company over Washington avenue so as to prevent the defendant, who had succeeded to its rights, from relaying its tracks thereon. Such abandonment only operated as a case of forfeiture of which the public alone could take advantage. A railroad corporation owes a duty to the public to exercise its franchise granted to it, and it cannot abandon a portion of its road and incur a forfeiture at its mere pleasure. A charter must be accepted or rejected in toto. If accepted, it must be taken as offered, and the company has no right to accept in part and reject in part."

The franchise of the Binghamton & Port Dickinson Railroad Company has never been forfeited or canceled in whole or in part by a decree of the court or by an act of the Legislature. Not only have the people refrained from taking any action in the courts or by legislative enactment to forfeit and annul the franchises so given to the Binghamton & Port Dickinson Railroad Company, but by chapter 145, p. 240, of the Laws of 1900, it is provided that:

"The time within which the * * * and the Binghamton Railroad Company shall finish their respective roads and put them in operation beyond their present construction and operation is hereby extended until the year nineteen hundred and five and no prejudice to the corporate existence and powers of the respective companies under their respective charters or articles of association shall arise on account of their noncompletion or operation of the said roads within the time prescribed by law."

All of the rights and franchises of the Binghamton & Port Dickinson Railroad Company became vested in the defendant railroad company pursuant to the consolidation agreements. The defendant railroad company had the right, therefore, under said franchise of the Binghamton & Port Dickinson Railroad Company and said agreement and consent, to construct and maintain a single or double track railroad on Court street. The Court Street & East End Railroad Company was not in terms incorporated for the purpose of maintaining a double-track railroad on said street, and there is not in this record any evidence that it ever obtained the consent of abutting owners necessary for the erection and maintenance of either a single or double track road on said street. The road actually constructed by it on Court street was in the center thereof, with a flat rail, laid not upon girders, but upon pieces of wood running lengthwise under the same; and the construction of said road on said street by the Court Street & East End Railroad Company was in direct violation of the terms of the act incorporating the Binghamton & Port Dickinson Railroad Company. The double tracks on that part of Court street in question commenced at the former terminus of the double tracks on Court street opposite Exchange street as they had previously been maintained by the Binghamton & Port Dickinson Railroad Company. All of the evidence now before us tends to sustain the new or modified and amended allegations of the defendants' answers. We are of the opinion that the defendant railroad company has the right, under the original charter of the Binghamton & Port Dickinson Railroad Company, to maintain a double track railroad on that part of Court street in question, and that under the pleadings as they now exist and the record now before us it should be held that it is maintaining its double-track railroad on said street by virtue of said original franchise. Assuming that we are right in holding that said original franchise still exists, and that the present rail-

road on Court street is maintained under the said original franchise, we do not understand that there is any serious dispute about the contract of April 26, 1892, being applicable to the railroad in said street.

The judgment therefore should be reversed on the law and facts, and a new trial granted, with costs to the appellant to abide the event. All concur.