### PUBLIC SERVICE COMMISSION OF FIRST DIST. v. NEW YORK RYS. CO.

(Supreme Court, Special Term, New York County. July 10, 1912.)

1. STREET RAILROADS (§ 28*)—FRANCHISES—DUTY TO BUILD AND OPERATE—PROFIT.

Where a franchise was granted to defendant's predecessor to construct and operate a street railway through 116th street in New York City to the East River, but the railway was built and operated only to a point one block west of the river, it was no sufficient answer to a mandamus proceeding to compel defendant to extend its line to the river that such extension would not be financially profitable, since the state grants such franchises primarily for the benefit of the public and the development of property, and not for the immediate enrichment of stockholders.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 39–42, 44, 45, 56, 61, 63–65; Dec. Dig. § 28.*]

2. STREET RAILROADS (§ 28*)—FRANCHISES—CONSTRUCTION—EXTENSION.

operate a railroad through a street to a river, but built the terminus of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

its line one block short of the river, it could not thereafter successfully claim that, because the necessity for construction to the river was not obvious at the time the road was built, it could not be compelled to carry out the terms of its franchise when the necessity was shown to exist.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 39–42, 44, 45, 56, 61, 63–65; Dec. Dig. § 28.*]

3. STREET RAILROADS (§ 28*)—FRANCHISES—PUBLIC NECESSITY.

Whether a street railway company should be compelled to extend its line to the terminus specified in its franchise depends on public necessity and convenience, and not on private advantage.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 39–42; 44, 45, 56, 61, 63–65; Dec. Dig. § 28.*]

4. STREET RAILROADS (§ 28*)—FRANCHISES—PRACTICAL CONSTRUCTION.

Where a street railway franchise provided for the construction of a line through a street to a river, the fact that the authorities apparently acquiesced in the termination of the line when it was originally constructed one block short of the river did not constitute a practical construction of the franchise so as to relieve the railroad company from thereafter extending the line to the river.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 39–42, 44, 45, 56, 61, 63–65; Dec. Dig. § 28.*]

5. MANDAMUS (§ 132*)—EXERCISE OF FRANCHISE—SCOPE OF REMEDY.

Where a street railway company refused to extend its line to the terminus specified in the franchise, the remedy of the public was not limited to an action by the Attorney General on behalf of the people to forfeit the franchise, the Public Service Commission being authorized by Public Service Commissions Law (Consol. Laws 1910, c. 48) § 57, to maintain mandamus to compel such construction; it being competent for the Legislature to extend the remedy by mandamus so long as the constitutional guaranty of due process of law was observed.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 266, 267; Dec. Dig. § 132.*]

6. STREET RAILROADS (§ 18*)—CHARTER—ACCEPTANCE.

Since a street railroad corporation owes a duty to the public to exercise the franchise granted to it, it cannot abandon a portion of its road and incur a forfeiture as to the balance at its pleasure, but it must accept or reject its charter in toto.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 39–41; Dec. Dig. § 18.*]

7. STREET RAILROADS (§ 28*)—CONSTRUCTION—OBLIGATION TO BUILD.

Where a street railway company accepted its franchise and built a substantial portion of its route, it was estopped thereafter to claim that it was under no legal obligation to complete the same, nor was its right to build lost by mere delay, unless by reason thereof a forfeiture had been enforced or the grant canceled, nor was the right of the public to compel an extension under the franchise affected by the delay of public officers in compelling the construction of such extension.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 39–42, 44, 45, 56, 61, 63–65; Dec. Dig. § 28.*]

8. MANDAMUS (§ 3*)—OTHER REMEDY—ADEQUACY.

Where a street railroad company refused to complete a portion of its road, the remedy of the public by suit to annul the corporation was inadequate, and mandamus would lie.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 8, 10, 11, 16–34; Dec. Dig. § 3.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

9. Constitutional Law (§ 133*)—Street Railroads (§ 4*)—Obligation of
   Contract—Franchises—Exercise—Mandamus.

   Where at the time a franchise for the construction of a street railway
   was granted, providing only for forfeiture of a deposit as a penalty for
   failure to perform the same, there was no public service commission or
   officers charged with the duty of compelling performance, such fact did
   not render the Public Service Commissions Law (Consol. Laws 1910, c.
   48), providing for such a commission with power to compel performance,
   nor section 57 thereof, creating a new remedy by mandamus, a violation
   of Const. U. S. art. 1, § 10, as an impairment of the obligation of a con-
   tract.

   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 376,
   402; Dec. Dig. § 133;* Street Railroads, Cent. Dig. §§ 2–7; Dec. Dig.
   § 4.*]

Application by the Public Service Commission of the First District
for writ of mandamus against the New York Railways Company.
Application granted.

Arthur Du Bois, Asst. Counsel, for Public Service Commission.

James L. Quackenbush (Wm. M. Coleman, of counsel), for New
York Rys. Co.

PAGE, J. The New York Railways Company is the successor to
the franchises and rights of the Lexington Avenue & Pavonia Ferry
Railroad Company, and has since January 1, 1912, owned and oper-
ated a line of street railroad on 116th street from Manhattan avenue
(one block east of Morningside Park) to Pleasant avenue (one block
west of the East River). By the terms of the franchise the road was
to run from Morningside Park to the East River. This proceeding
is brought under section 57 of the Public Service Commissions Law
(Consol. Laws 1910, c. 48) to compel the corporation to build and
operate its line from its present terminus, Pleasant avenue, to the East
River. The Lexington Avenue & Pavonia Ferry Railroad Company
was incorporated under and by virtue of the provisions of the Rail-
road Law (Consol. Laws 1910, c. 49) December, 1892, and purchased
this franchise on or about January 6, 1893, and constructed and com-
menced to operate its line between its present termini in the summer
or fall of 1895. There has been no change in the bulkhead or pier
lines of the East River at 116th street since 1892, except that about
30 feet has been filled in to bring the actual street out to the bulkhead
line. In 1897 the dock was constructed and a ferry established, oper-
ating from the foot of 116th street to Ward's Island, where the state
had constructed the Manhattan State Hospital for the Insane. In the
month of May, 1912, 39,607 people used this ferry, and in the first
7 days of June, 1912, 9,018 people used the ferry. There is no car
line running to the ferry, and people desiring to avail themselves of
this means of transportation are compelled to walk a distance of seven
hundred feet to reach the line in question. That the completion of
this line in accordance with the franchise would be a public conven-
ience cannot be questioned. The Railway Company, however, urges
that conditions at the time of the granting of the franchise should
control, and as there was no public convenience or necessity apparent

at that time in extending the road beyond Pleasant avenue, and it was suffered to suspend construction at that point, they cannot be compelled to extend it now. That the extension would not be financially profitable to them is urged and may be true.

[1] But the state does not grant franchises to build and operate railroads, giving to the corporation the right of eminent domain, solely for the purpose of the immediate enrichment of the stockholders. It is because the road will develop property, thus increasing the value and the return in taxes therefrom, and increase the facilities of the traveling public, that the state makes these grants. It frequently happens in the case of a street railroad that a portion of the franchise will run through a thickly populated section and also into a section but sparsely inhabited. The interest of the state will be conserved by the building up of the latter section. To allow the company to build and operate that portion of the franchise that would be presently remunerative and at its pleasure build or not the extension into the then unremunerative section would defeat the purpose of the grant; also, as in the case at bar, it may have been foreseen that the necessity for transportation to this point on the East River would arise in the future, and it was decided that the terminus of this road should there be established.

[2] The company cannot say that because the necessity was not obvious at the time it could stop short of the terminal point, and when the necessity is shown to exist cannot be compelled to carry out the terms of its franchise.

[3] Public necessity and convenience, and not private advantage, controls.

[4] Nor is the claim of the company well founded that because the authorities apparently acquiesced in their ending the road at Pleasant avenue thereby a practical construction was given to the franchise by the parties. The language of the franchise grant is plain and unambiguous and therefor is not open to construction. The line of the East River never coincided with Pleasant avenue, nor was its location a doubtful question.

[5] Counsel for the Railway Company further contend that mandamus is not the proper remedy, and that the proceeding cannot be instituted under section 57 of the Public Service Commissions Law, but that the only remedy is by an action on behalf of the people of the state of New York brought by the Attorney General to forfeit the franchise. One of the purposes of the Legislature in creating the Public Service Commission was to establish a body having supervision of public service corporations, with power to investigate the manner in which they were performing their obligations to the public and the state, and, after investigation, to summarily take measures to compel compliance with obligations arising either from the franchise grant or the nature of the business carried on. The existing remedies had been found in many respects inadequate and new remedies were created. These were not intended to supersede the old, but to place in the hands of public officers more efficient remedies. People ex rel. Karl v. United Traction Co., 145 App. Div. 645, 650, 130 N. Y. Supp. 477. There-

fore, although the Attorney General might possibly have instituted a proceeding to forfeit this franchise, the forfeiture in this case would be of the entire franchise, and might work such inconvenience and hardship that the Attorney General would be disinclined to apply for· such drastic action. The Legislature has prescribed in section 57 of the Public Service Commissions Law a simple summary proceeding which can work no hardship nor inconvenience, unless it arise through compelling the corporation to do those things which it has contracted to do; It is not profitable to discuss the question whether aside from this statute a writ of mandamus could issue. It is competent for the Legislature to provide that such writ shall issue in a case where theretofore it would not, and, so long as the constitutional guarantee of due process of law is observed, courts will not refuse to exercise the remedy in the manner and form prescribed by the statute, nor seek to limit the new proceeding to the qualification of the old.

The Legislature having provided that under certain conditions a proceeding may be instituted for a writ of mandamus, the sole question to be determined is: Do the facts of this case come within the provisions of the statute? The respondent contends that they do not, for the reason, first, that a failure to construct to the end of the route is not a violation of law, and, second, that the corporation was organized under the Railroad Law, which, it is claimed, places no obligation on the company to build, but merely provides that in case of failure to construct within a certain length of time the company shall lose its rights. The vice of the company's contentions is that it fails to appreciate the public character of its franchise. "The right to construct and operate a street railroad is a franchise which must have its source in the sovereign power, and the legislative power over the subject has this limitation: That the franchise must be granted for public, and not for private, purposes, or at least the grant must be based upon public considerations." Paige v. Schenectady Ry., 178 N. Y. 102, 114, 115, 70 N. E. 213, 217. "A railroad corporation owes a duty to the public to exercise the franchise granted to it, and it cannot abandon a portion of its road and incur a forfeiture at its mere pleasure. A charter must be accepted or rejected in toto. If accepted it must be taken as offered, and the company has no right to accept in part and reject in part."

[6] It may be that, where a company has not built any part of its route under its franchise, the court would not force it to build, as a forfeiture would be a full and adequate remedy.

[7] But having accepted the franchise, and having built a substantial portion of the route, does there not rest upon the company any legal obligation to complete its route? The company's right to build is not lost by mere delay, unless by reason thereof a forfeiture has been enforced or the grant canceled (Kent v. Common Council, 94 App. Div. 522, 88 N. Y. Supp. 34), and by mere abandonment it does not lose the right to reoccupy. It must be that the public, which originally, either through the direct act of the Legislature or through the Railroad Company being incorporated under the General Railroad Law, had permitted the occupation of its streets and highways, must

have some right to insist that the rights granted and acted upon to the benefit of the company shall be fully carried out pursuant to the original terms of the grant. It cannot be that the Railroad Company obtains everything and the public nothing from the original charter. If a railroad company can occupy a portion of the public streets and highways and thereafter construct under its original grant the remaining portion, it is difficult to understand why the public cannot insist on its constructing and operating its road to the full extent of its grant. If a railroad can thus abandon some portion of its route and resume the use of its franchise at will, it might easily defeat any new franchise in a public street or highway while not using its own, unless some power exists to compel it to exercise its franchise by building and operating its abandoned route. The obligation must be reciprocal and the state must have power to compel the company to exercise its franchise. "The state * * * has no other adequate remedy" (than mandamus).

[8] "It may proceed, it is true, to annul the corporation, as has been held in many cases where corporations had neglected public duties, * * * but that remedy is not adequate, for it only destroys functions where the public interest requires their continued existence and enforcement. It has there an election which of these two remedies to pursue." People v. N. Y. C. & H. R. R., 28 Hun, 543. A duty to the public requires a full performance of its franchise, and this is a duty required by law. The violation of the law upon which the Public Service Commission may act is not restricted to such offenses as are specifically mentioned in the written law (Willcox v. Richmond, L. & R. Co., 142 App. Div. 44, 128 N. Y. Supp. 266; Id., 202 N. Y. 515, 95 N. E. 1141), but by the express language of section 57 includes the failure or omission "to do anything required of it by law." Although at the time the franchise was granted there existed no board or officer expressly charged with the supervision of the grantee of a franchise to compel it to perform the obligations it assumed, the power of the Legislature to create such a board and give it such power cannot be successfully questioned.

[9] The learned counsel for the company contends that, as a forfeiture of the franchise or a forfeiture of the deposit of $1,000,000 was the only penalty for a failure to perform the franchise, that the enactment of an additional provision for a remedy by way of mandamus, with its liability of punishment for disobedience, as for a contempt of court, would be in violation of the federal Constitution (article 1, § 10), which forbids the passage of a law impairing the obligation of a contract. Although this point seems to have been seriously urged, it does not merit serious consideration. The obligation of the contract is in no wise impaired. A more efficient remedy is provided to compel its performance in accordance with its terms. Finally, the company urge that the delay, on the part of the state of New York and city of New York, of 17 years in making an application to compel the company to construct an extension of its line from the intersection of Pleasant avenue and 116th street to the East River constitutes such laches as to bar this proceeding. Counsel, however, fails to show how

the company has been prejudiced by this delay, but, as Judge Story has, said:

"The general principle is that laches is not imputable to the government; and this maxim is founded, not in the notion of extraordinary prerogative, but upon a great public policy." United States v. Kirkpatrick, 9 Wheat. 720, 735, 6 L. Ed. 199.

As a state can only act through officers and agents, if their neglect could be imputed to the state statutes might in effect be repealed and great and serious loss be entailed on the state, and the will of the people thwarted by a negligent or corrupt official. I am of opinion that the facts in this proceeding establish the right to the issuance of a peremptory writ of mandamus in accordance with the prayer of the petition.

Application granted, with costs. Settle order and writ on notice.