The Public Service Commission of the First District, Plaintiff, *v.* The New York Railways Company, Defendant.

(Supreme Court, New York Special Term, August, 1912.)

Public Service Commissions Law — granting franchise to construct and operate a railway — mandamus — constitutional law — contracts.

Where defendant's predecessor was granted a franchise to construct and operate a railway on One Hundred and Sixteenth street in the city of New York, to run from Morningside park to the East river, but the road was built and operated only to a point one block west of the river, it is no answer to an application for a writ of mandamus to compel the extension of the line to the river that the extension would not be financially profitable.

Nor can the railway company successfully claim that because the necessity for the construction of the line to the river was not obvious at the time of the building of the road, it cannot be compelled to carry out the terms of its franchise when the necessity therefor is shown, as public convenience and not private advantage controls.

A claim of the company, that because the public authorities apparently acquiesced in the ending of the line one block west of the river there was a practical construction given to the franchise by the parties, is untenable, and does not relieve the company from extending the line to the river as required by the plain and unambiguous language of the franchise.

The legislature may provide a remedy by mandamus so long as the constitutional guaranty of due process of law is observed, and though, upon the refusal of defendant's railway to extend its line to the river, an action for the forfeiture of its franchise was maintainable by the attorney-general, the building of such extension may be summarily compelled under section 57 of the Public Service Commissions Law.

The defendant owes a duty to the public to exercise its franchise and cannot, at pleasure, abandon a portion of its road and incur a forfeiture, as the franchise must be accepted or rejected *in toto*. The defendant, having accepted the franchise and built a portion of the route, is estopped from disclaiming any legal obligation to complete the same; its right to build was not lost by mere delay unless by reason thereof a forfeiture had been enforced or the grant canceled; the delay of public officials in compelling the extension of the line did not preclude the public from

insisting that defendant construct and operate its line to the full extent of its grant.

Defendant having refused to make the extension of its line to the river, mandamus is the only adequate remedy to compel the performance of its franchise obligation.

Though at the time the franchise was granted, which provided for the forfeiture of a deposit for failure to perform, there existed no board or officers expressly charged with compelling performance of the franchise, neither the enactment of the Public Service Commissions Law nor the provision thereof for a remedy by mandamus to compel the performance of franchise obligations is in violation of the provision of the Federal Constitution (Art. I, § 10) which forbids the passage of a law impairing the obligations of a contract.

APPLICATION for a peremptory writ of mandamus.

Arthur DuBois, assistant counsel, for Public Service Commission.

James L. Quackenbush (Wm. M. Coleman of counsel), for New York Railways Company.

PAGE, J. The New York Railways Company is the successor to the franchises and rights of the Lexington Avenue and Pavonia Ferry Railroad Company, and has since January 1, 1912, owned and operated a line of street railroad on One Hundred and Sixteenth street from Manhattan avenue (one block east of Morningside park) to Pleasant avenue (one block west of the East river). By the terms of the franchise the road was to run from Morningside park to the East river. This proceeding is brought under section 57 of the Public Service Commissions Law to compel the corporation to build and operate its line from its present terminus, Pleasant avenue, to the East river. The Lexington Avenue and Pavonia Ferry Railroad Company was incorporated under and by virtue of the provisions of the Railroad Law, December, 1892, and purchased this franchise on or about January 6, 1893, and constructed and commenced to operate its line between its present termini in the summer or fall of 1895. There has been no change in the bulkhead or pier lines of

the East river at One Hundred and Sixteenth street since 1892, except that about thirty feet have been filled in to bring the actual street out to the bulkhead line. In 1897 the dock was constructed and a ferry established, operating from the foot of One Hundred and Sixteenth street to Ward's island, where the state had constructed the Manhattan State Hospital for the Insane. In the month of May, 1912, 39,607 people used this ferry, and in the first seven days of June, 1912, 9,018 people used this ferry. There is no car line running to the ferry, and people desiring to avail themselves of this means of transportation are compelled to walk a distance of 700 feet to reach the line in question. That the completion of this line in accordance with the franchise would be a public convenience cannot be questioned. The railway company, however, urges that conditions at the time of the granting of the franchise should control, and as there was no public convenience or necessity apparent at that time in extending the road beyond Pleasant avenue, and it was suffered to suspend construction at that point, they cannot be compelled to extend it now. That the extension would not be financially profitable to them is urged and may be true. But the state does not grant franchises to build and operate railroads, giving to the corporation the right of eminent domain, solely for the purpose of the immediate enrichment of the stockholders. It is because the road will develop property, thus increasing the value and the return in taxes therefrom, and increase the facilities of the traveling public that the state makes these grants. It frequently happens in the case of a street railroad that a portion of the franchise will run through a thickly populated section and also into a section but sparsely inhabited. The interest of the state will be conserved by the building up of the latter section. To allow the company to build and operate that portion of the franchise that would be presently remunerative and at its pleasure build or not the extension into the then unremunerative section would defeat the purpose of the grant. Also, as in the case at bar, it may have been foreseen that the necessity for transportation to this point on the East river would arise in the

future, and it was decided that the terminus of this road should there be established. The company cannot say that because the necessity was not obvious at the time it could stop short of the terminal point, and when the necessity is shown to exist cannot be compelled to carry out the terms of its franchise. Public necessity and convenience and not private advantage control. Nor is the claim of the company well founded that, because the authorities apparently acquiesced in their ending the road at Pleasant avenue, thereby a practical construction was given to the franchise by the parties. The language of the franchise grant is plain and unambiguous and, therefore, is not open to construction. The line of the East river never coincided with Pleasant avenue, nor was its location a doubtful question. Counsel for the railway company further contend that mandamus is not the proper remedy, and that the proceeding cannot be instituted under section 57 of the Public Service Commissions Law, but that the only remedy is by an action on behalf of the people of the state of New York brought by the attorney-general to forfeit the franchise. One of the purposes of the legislature in creating the Public Service Commission was to establish a body having supervision of public service corporations, with power to investigate the manner in which they were performing their obligations to the public and the state, and after investigation to summarily take measures to compel compliance with obligations arising either from the franchise grant or the nature of the business carried on. The existing remedies had been found in many respects inadequate and new remedies were created. These were not intended to supersede the old, but to place in the hands of public officers more efficient remedies. People ex rel. Karl v. United Traction Co., 145 App. Div. 645, 650. Therefore, although the attorney-general might possibly have instituted a proceeding to forfeit this franchise, the forfeiture in this case would be of the entire franchise and might work such inconvenience and hardship that the attorney-general would be disinclined to apply for such drastic action. The legislature has prescribed in section 57 of the Public Service Commis-

sions Law a simple summary proceeding which can work
no hardship or inconvenience, unless it arise through com-
pelling the corporation to do those things which it has con-
tracted to do.   It is not profitable to discuss the question
whether aside from this statute a writ of mandamus could
issue.   It is competent for the legislature to provide that
such writ shall issue in a case where theretofore it would
not, and so long as the constitutional guaranty of due pro-
cess of law is observed courts will not refuse to exercise the
remedy in the manner and form prescribed by the statute
nor seek to limit the new proceeding to the qualification of
the old.   The legislature having provided that under certain
conditions a proceeding may be instituted for a writ of
mandamus, the sole question to be determined is:  Do the
facts of this case come within the provisions of the statute?
The respondent contends that they do not, for the reason,
first, that a failure to construct to the end of the route is
not a violation of law, and, second, that the corporation
was organized under the Railroad Law, which, it is claimed,
places no obligation on the company to build, but merely
provides that in case of failure to construct within a certain
length of time the company shall lose its rights.   The vice
of the company's contentions is that it fails to appreciate
the public character of its franchise.   " The right to con-
struct and operate a street railway is a franchise which
must have its source in the sovereign power, and the legis-
lative power over the subject has this limitation, that the
franchise must be granted for public and not for private
purposes, or at least the grant must be based upon public
considerations."   Paige v. Schenectady R. Co., 178 N. Y.
102, 115.   "A railroad corporation owes a duty to the pub-
lic to exercise the franchise granted to it, and it cannot
abandon a portion of its road and incur a forfeiture at its
mere pleasure.   A charter must be accepted or rejected *in
toto*.   If accepted it must be taken as offered, and the com-
pany has no right to accept in part and reject in part."   Id.,
114.   It may be that where a company has not built any
part of its route under its franchise the court would not
force it to build, as a forfeiture would be a full and ade-

quate remedy. But having accepted the franchise and having built a substantial portion of the route, does there not rest upon the company any legal obligation to complete its route? The company's right to build is not lost by mere delay, unless by reason thereof a forfeiture has been enforced or the grant canceled (Kent v. Common Council, 94 App. Div. 522), and by mere abandonment it does lose the right to reoccupy. It must be that the public, which originally, either through the direct act of the legislature or through the railroad company being incorporated under the General Railroad Law, had permitted the occupation of its streets and highways, must have some right to insist that the rights granted and acted upon to the benefit of the company shall be fully carried out pursuant to the original terms of the grant. It cannot be that the railroad company obtains everything and the public nothing from the original charter. If a railroad company can occupy a portion of the public streets and highways and thereafter construct under its original grant the remaining portion, it is difficult to understand why the public cannot insist on its constructing and operating its road to the full extent of its grant. If a railroad can thus abandon some portion of its route and resume the use of its franchise at will it might easily defeat any new franchise in a public street or highway while not using its own, unless some power exists to compel it to exercise its franchise by building and operating its abandoned route. The obligation must be reciprocal and the state must have power to compel the company to exercise its franchise. " The state * * * has no other adequate remedy [than mandamus]. It may proceed it is true, to annul the corporation, as has been held in many cases where corporations had neglected public duties, * * * but that remedy is not adequate, for it only destroys functions where the public interest requires their continued existence and enforcement. It has there an election which of these two remedies to pursue." People v. N. Y. C. & H. R. R. R. Co., 28 Hun, 543. A duty to the public requires a full performance of its franchise, and this is a duty required by law. The violation of the law upon which

the Public Service Commission may act is not restricted to such offenses as are specifically mentioned in the written law (Willcox v. Richmond L. & R. R. Co., 142 App. Div. 44, 202 N. Y. 515), but by the express language of section 57 includes the failure or omission " to do anything required of it by law." Although at the time the franchise was granted there existed no board or officer expressly charged with the supervision of the grantee of a franchise to compel it to perform the obligations it assumed, the power of the legislature to create such a board and give it such power cannot be successfully questioned. The learned counsel for the company contends that, as a forfeiture of the franchise or a forfeiture of the deposit of $1,000,000 was the only penalty for a failure to perform the franchise, the enactment of an additional provision for a remedy by way of mandamus, with its liability of punishment for disobedience, as for a contempt of court, would be in violation of the Federal Constitution (art. I, § 10), which forbids the passage of a law impairing the obligation of a contract. Although this point seems to have been seriously urged it does not merit serious consideration. The obligation of the contract is in nowise impaired. A more efficient remedy is provided to compel its performance in accordance with its terms. Finally the company urge that the delay, on the part of the state of New York and city of New York, of seventeen years in making an application to compel the company to construct an extension of its line from the intersection of Pleasant avenue and One Hundred and Sixteenth street to the East river constitutes such laches as to bar this proceeding. Counsel, however, fails to show how the company has been prejudiced by this delay, but as Judge Story has said, " the general principle is that laches is not imputable to the government; and this maxim is founded, not in the notion of extraordinary prerogative, but upon a great public policy." United States v. Kirkpatrick, 9 Wheat. 720, 735. As a state can only act through officers and agents, if their neglect could be imputed to the state statutes might in effect be repealed and great and serious loss be entailed on the state, and the will of the people thwarted by a negligent or

corrupt official. I am of opinion that the facts in this proceeding establish the right to the issuance of a peremptory writ of mandamus in accordance with the prayer of the petition.

Application granted, with costs.

---

The Trustees of Sailors' Snug Harbor, Plaintiffs, *v.* Thomas Carmody, as Attorney-General, Defendant.

(Supreme Court, New York Special Term, August, 1912.)

Parties — pleading — misjoinder of parties — waiver:
Corporations — wills — power of sale under a will — vesting title in said corporation.

> The objection of a misjoinder of parties plaintiff must be distinctly specified as a ground of demurrer, or it is waived.
> Under the statute (L. 1806, ch. 4), by which the testamentary trustees of the residuary estate of R. were incorporated as the "Trustees of the Sailors' Snug Harbor, in the City of New York," to give effect to the charitable purposes expressed in the will of R. the entire title to all the property, real and personal, devised and bequeathed by said testator, became vested in said corporation for the corporate purposes expressed in said statute.
> Said corporation has inherent power to sell all or any part of certain real estate in the city of New York of which testator died seized, and the exercise of such power, if deemed necessary by the trustees of the corporation, must be taken on their own responsibility, and they cannot maintain an action for the purpose of obtaining instructions as to the powers of such corporation in dealing with the property devised and bequeathed in trust.

Demurrer to complaint.

Hawkins, Delafield & Longfellow (Lewis L. Delafield, of counsel), for plaintiffs.

Henry Selden Bacon, for defendant.

Page, J. This action is brought by the trustees of Sailors' Snug Harbor as trustees of the corporation and as trus-