PITTSBURGH & SHAWMUT COAL CO. et al. v. DELAWARE & N. R. CO.

(District Court, N. D. New York. May 17, 1923.)

1. **Railroads ☞214—Owners may abandon entire road, if unprofitable.**

   The owners of a railroad may abandon the entire road, if it cannot be operated without continuous loss, and there is no reasonable prospect of future profitable operation.

2. **Railroads ☞214—Right to abandon entire line, if unprofitable, cannot be impaired by statute.**

   The constitutional right of a railroad to abandon its entire line, if operation without loss is impossible, cannot be impaired by subsequent legislative enactment, either federal or state.

3. **Railroads ☞210—Receiver appointed by federal court bound by state laws.**

   Under Comp. St. § 1047, a receiver appointed by a federal court to operate a railroad within a state must operate such railroad according to the valid laws of that state, in the same manner that the owner would be bound to do, if in possession thereof.

4. **Railroads ☞210—Federal court may not authorize abandonment of unprofitable branch, contrary to state law.**

   While a federal court may permit its receiver to abandon an entire railroad enterprise, the further operation of which will result only in the loss of the owner's invested capital, in the absence of any interstate commerce questions the court cannot permit the receiver to abandon an unprofitable branch of its road, where such partial abandonment is forbidden by the laws of the state from which the railroad received its franchise and in which it operates.

Proceeding by the Pittsburgh & Shawmut Coal Company and others against Delaware & Northern Railroad Company, in which the receivers of the Railroad Company made application for an order authorizing the abandonment of a branch of the railroad, which application was resisted by the Town of Andes and certain of its residents. Application denied.

Elkus, Gleason, Vogel & Proskauer, of New York City (Donald C. Strachan, of New York City, of counsel), for receivers.

Raymond Ballantine, of New York City, for Town of Andes.

M. Linn Bruce, of New York City (Andrew C. Fenton, of Margaretville, N. Y., of counsel), for certain residents of Town of Andes.

COOPER, District Judge. Application is made by the receivers of the defendant, Delaware & Northern Railroad Company, for an order

authorizing the abandonment of the Andes branch of said railroad, extending from Andes Junction, near Union Grove, to the village of Andes, in the county of Delaware, a distance of 8 miles, and the disposal of the property used in the operation of said branch, including its real estate and right of way.

This railroad company was incorporated under the railroad laws of the state of New York and its railroad is situated entirely in the county of Delaware, in the state of New York, and is about 46 miles in length, including this Andes branch. It has been operated by the receivers since March 16, 1921. During the latter part of the receivership the road has, as a whole, been operated at a profit.

The opponents of this application sharply contest the claim of the receivers that the Andes branch is being operated at a loss of about $7,000 per year, that the traffic is all upgrade from Union Grove to the terminus at Andes, and that the physical conditions are such that the expenses of maintenance are excessive. It will, however, be assumed for the purpose of the argument that the allegations of the receivers are correct, that the branch is operated at a substantial annual loss, that the maintenance charge is excessive, and that the traffic is largely one way.

[1] At the threshold of this application, the contention is made that this court has no power to authorize the abandonment of a part of a railroad operated under a franchise from the state of New York. If this be so, it disposes of this application. Little question is raised but that the owners of a railroad may abandon the entire road, if it cannot be operated without continuous loss, and there is no reasonable prospect of profitable operation in the future. Brooks-Scanlon Co. v. Railroad Com., 251 U. S. 396, 40 Sup. Ct. 183, 64 L. Ed. 323; Bullock v. State of Florida, 254 U. S. 513, 41 Sup. Ct. 193, 65 L. Ed. 380.

[2] This right of abandonment, being constitutional in its nature, cannot be impaired by subsequent legislative enactment, either federal or state. The abandonment of a part of a railroad, without the consent of the state, because the operation of such part entails a loss, while the profitable part of the road is continued in operation, is quite another question.

The courts of the state of New York seem to have held that a railroad company may not abandon a part of its railroad, and operate the remainder, without the consent of the state. In People v. Albany & Vermont Railroad Co., 24 N. Y. 261, 82 Am. Dec. 295, it appeared that defendant's predecessor was organized for the purpose of operating a railroad between Albany and Eagle Bridge. Soon after acquiring the property at foreclosure, the defendant railroad abandoned a portion of the road running from Waterford Junction to Eagle Bridge, but continued to operate the remainder. The court held that the abandonment was illegal, and that the franchise could only be legally exercised by a corporation operating its entire road, and that it had no privilege or right to abandon part thereof and operate the remainder.

In Paige v. Schenectady Railroad Co., 178 N. Y. 102, 70 N. E. 213, the doctrine that a public railroad corporation cannot abandon a por-

tion of its road at its mere pleasure, is re-asserted. The rule thus applied has been consistently accepted as the doctrine in this state. See Public Service Commission v. New York R. Co., 77 Misc. Rep. 487, 136 N. Y. Supp. 720, and cases therein cited.

Outside of the state of New York, the great preponderance of authorities supports the same rule. See State of Nebraska v. S. C. & P. R. R. Co., 7 Neb. 359; Colorado & Southern R. Co. v. State Railroad Commission, 54 Colo. 64, 129 Pac. 506; State ex rel. Naylor v. Dodge City M. & T. R. R. Co., 53 Kan. 377, 36 Pac. 747, 42 Am. St. Rep. 295; Attorney General v. West Wisconsin Ry. Co., 36 Wis. 466; Brownell v. Old Colony R. Co., 164 Mass. 29, 41 N. E. 107, 29 L. R. A. 169, 49 Am. St. Rep. 442. The courts of the United States have also held that, where a railroad franchise has been accepted by a railroad corporation, it must fulfill all its charter obligations and may not elect to carry out the profitable part and abandon the unprofitable part.

In Missouri Pacific R. Co. v. Kansas, 216 U. S. 262, 30 Sup. Ct. 330, 54 L. Ed. 472, the Supreme Court of Kansas granted a mandamus to enforce an order of the Kansas Railroad Commission ordering the defendant company to operate a passenger train over a branch upon which it had discontinued regular passenger service. The Supreme Court of the United States, in affirming the judgment of the state court, said:

"The fact that the performance of the duty commanded by the order which is here in question may, as we have conceded for the purpose of the argument, entail a pecuniary loss, is, of course, as declared in the Atlantic Coast Line Case as a general rule, a circumstance to be considered in determining its reasonableness, as are the other criteria indicated in the opinion in that case. But where a duty which a corporation is obliged to render is a necessary consequence of the acceptance and continued enjoyment of its corporate rights, those rights not having been surrendered by the corporation, other considerations are in the nature of things paramount, since it cannot be said that an order compelling the performance of such duty at a pecuniary loss is unreasonable. To conclude to the contrary would be but to declare that a corporate charter was purely unilateral, that is, was binding in favor of the corporation as to all rights conferred upon it and was devoid of obligation as to duties imposed, even although such duties were the absolute correlative of the rights conferred."

In Brooks-Scanlon & Co. v. Railroad Commission, 251 U. S. 396, 40 Sup. Ct. 183, 64 L. Ed. 323, the court while deciding that the entire railroad enterprise should be abandoned because incapable of operation without loss, also said:

"It is true that if a railroad continues to exercise the powers conferred upon it by a charter from a state, the state may require it to fulfill an obligation imposed by the charter, even though a fulfillment in that particular may cause a loss."

The ground upon which these decisions are based is that a railroad franchise or corporate charter granted by a state may not be altered or modified, or the railroad released from any of its corporate obligations, without the consent of the state. For this court to permit its receiver to abandon this Andes branch, while the remainder of the railroad continues to be operated by the receiver, would be for the

court, without the consent of the state, to alter or modify the corporate charter or franchise granted by the state, and to release the railroad from some of its obligations, which turned out to be undesirable and burdensome, while retaining the desirable ones. This should not be done without ample authority.

Counsel for the receivers cites, as authority for the proposition that the court has power to authorize the receiver to abandon a portion of the road, the case of State v. Old Colony Trust Co., 215 Fed. 307, 131 C. C. A. 581, L. R. A. 1915A, 549. In that case, however, justification for a departure from the rule set forth in the foregoing cases is based upon the fact that the statute of the state of Iowa, in which the road in that case was located, directly conferred upon the courts authority to change or remove a line of road after it had been permanently located and constructed. Code Iowa 1897, §§ 2092–2098. No such power is conferred upon the court by the statutes of New York. Section 16 of the Railroad Law (Consol. Laws, c. 49) applies to a change of route before construction, and has no relation to alteration or abandonment after construction.

No authority has been cited by the counsel for the receivers, except the Iowa case above referred to, and none has been found in which any federal court has ever authorized a railroad company operating in a single state to abandon, without the consent of the state, the operation of a portion of a railroad while continuing to operate the remainder. The rate cases cited by counsel for the receiver have no analogy to the question here. The authority, therefore, to sustain the contentions of the receivers, is lacking.

There being no constitutional question, no question of interstate commerce, nor of the scope of the federal power in respect to interstate commerce in this case, there would seem, therefore, to be no justification, in view of the authorities above cited, for this court to assert a power which otherwise it does not possess, namely, power to modify the franchise contract between the state, and the state's corporate creation.

[3] Moreover, the federal statute expressly provides that a receiver appointed by a federal court to operate a railroad within a state shall operate such railroad according to the valid laws of that state, in the same manner that the owner would be bound to do if in possession thereof, and provides a penalty for disobedience. Section 1047 of the Compiled Statutes; Judicial Code, § 65; Erb v. Morasch, 177 U. S. 584, 20 Sup. Ct. 819, 44 L. Ed. 897; Westinghouse, etc., v. Binghamton R. Co. (D. C.) 255 Fed. 378. Assuming that this provision of the federal statute covers all the laws of the state, and is not confined to safety regulations, etc., the receiver not only could not abandon the Andes branch of the road without consent of the state, but could be punished for abandonment in any way other than as provided in the state statutes.

[4, 5] A federal court may therefore, as shown, in the protection of rights guaranteed by the federal Constitution, permit its receiver to abandon an entire railroad enterprise, whose further operation will result only in the confiscation of the owner's invested capital, but that,

in the absence of any interstate commerce questions, is the extent of judicial interference with the corporate rights and obligations embodied in the franchise to the railroad company from the state.

In view of the foregoing conclusions it is not necessary to discuss any other questions raised.

The application must be denied.