### GENERAL FINANCE CORPORATION v. NEW YORK STATE RYS.

### SECURITY TRUST CO. OF ROCHESTER v. NEW YORK STATE RYS. et al.

### No. 57.

Circuit Court of Appeals, Second Circuit.

Jan. 4, 1932.

Hiscock, Williams & Cowie, of Syracuse, N. Y. (Frank H. Hiscock, of Syracuse, N. Y., of counsel), for New York Central R. Co.

Willis H. Michell, of Syracuse, N. Y. (Charles E. Spencer, of Syracuse, N. Y., of counsel), for receivers of New York State Railways.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellees were appointed receivers of the New York State Railways on December 30, 1929, in a creditors' equity suit. The railroad company's properties were subject to certain mortgages. On April 1, 1930, suit was instituted to foreclose one of the mortgages. That suit was consolidated with the creditors' suit, and the appointment of appellees was extended to the consolidated suit. The receivership included all the assets and properties of the New York State Railways, subject to the lien of the mortgage. The Oneida Railway Company owned and operated a street railway system in the city of Oneida, N. Y., and it was merged with the New York State Railways. On December 31, 1908, the Oneida Railway Company entered into an agreement with the New York Central & Hudson River Railroad Company for the right to use its tracks of the West Shore Division between Utica and Syracuse for a period until July 1, 1942. It was but a traffic agreement, and provided for the joint use of the two main tracks. Under date of December 17, 1928, the New York Central Railroad Company, as successor of the New York Central & Hudson River Railroad Company, entered an agreement with the New York State Railways modifying the December 31, 1908, agreement, providing for an option to terminate the agreement on six months' notice upon condition that the Rail-

ways should establish a bus line between Utica and Syracuse, in the following language:

"If the Oneida Company shall at any time desire to discontinue its use of the West Shore railroad between Utica and Syracuse as herein provided for and to establish a bus line between the said places, it may do so upon giving six months' prior written notice to the Central Company of such intention after the receipt of necessary authority for the establishment of such bus line from the required governmental authorities, and in the event upon the expiration of said six months period the grant of trackage rights from the Central Company to the Oneida Company contained in this agreement shall forthwith terminate and end, and the parties hereto shall thereupon be released from all obligations arising under this agreement subsequent to the date of such termination."

After the creditors' bill was filed, the receivers, by order of the court, were given extensions of time to affirm or disaffirm contracts. These extensions carried until March 2, 1931. On November 6, 1930, the receivers made their report, requested instructions from the court, and recommended that they be authorized to disavow the agreement of the New York Central Railroad Company with the modification above referred to. This report showed a loss for operation and inability to make sufficient to pay the rental. It showed that the installation of a bus line between Utica and Syracuse would involve the expenditure of $225,000, and that it did not have this amount to invest. The New York Central Railroad Company appeared, filed its answer and participated in the hearings. The court entered an order directing a disaffirmance of the agreement.

The argument of appellant is that the use of the railroad beyond the six months' period was an affirmance of the contract, and that, in any event, it should not be permitted to discontinue without the payment of at least six months' rent. It is further agreed that it could not abandon the use of the tracks without consent of the Public Service Commission.

■ The receivers of property, appointed in an equity suit, are not bound to adopt the contracts of the corporation or to accept the losses if, in their opinion, it would be unprofitable and undesirable to continue beyond a period to ascertain the wisdom of adoption or repudiation of the contracts. United States Trust Co. v. Wabash Ry. Co., 150 U. S. 287, 14 S. Ct. 86, 37 L. Ed. 1085; Quin-

cy, M. & P. R. Co. v. Humphreys, 145 U. S. 82, 12 S. Ct. 787, 36 L. Ed. 632; Westinghouse Elec. Co. v. Brooklyn R. T. Co., 6 F.(2d) 547, 549 (C. C. A. 2); City and County of Denver v. Stenger, 295 F. 809 (C. C. A. 8); Pennsylvania Steel Co. v. N. Y. C. R. R., 198 F. 721, 729 (C. C. A. 2). This court said, in Pennsylvania Steel Co. v. N. Y. C. R. R. Co., supra:

"If a receiver elect to adopt a lease, he becomes vested with the title to the leasehold interest and a privity of estate is thereby created between the lessor and him by which he becomes liable upon the covenant to pay rent. U. S. Trust Co. v. Wabash Ry., 150 U. S. 299, 14 S. Ct. 86, 37 L. Ed. 1085. But unless and until he does adopt a lease, there is no such privity and no liability upon the lease. He holds possession not as a trespasser but rather as a licensee for the purpose of determining what disposition to make of the leasehold estate. The rule is well settled that a receiver in taking possession of a leased road is entitled to a reasonable time in which to decide whether the interests of his trust will be better subserved by making the lease his own or by returning the property to the lessor." (Citing cases.)

The option to terminate upon six months' notice was conditioned upon the establishment of a bus line by the New York State Railways, and, since no bus line was established, the six months' termination provision never became operative.

■ The order of the court permitting disaffirmance of the agreement was made November 6, 1930, eleven months after the appointment of the receivers. It was within seven months after the receivership in the foreclosure suit. This order was entered within a reasonable time. In Westinghouse Elec. Co. v. Brooklyn Rapid Transit, supra, we stated that a reasonable time must be determined by the circumstances of the case, and said:

"But reasonable time for decision and promptitude in return are both relative terms, relative to existing and always varying circumstances, and in respect of leased transportation systems operating under franchises conferred by the public and serving public necessities, the overwhelmingly important circumstance is that the obligations of the carrier to the public must be fulfilled by the receiver, and the lessor's franchises must be preserved."

In the instant case, the court granted extensions as indicated, and we do not think they were for an unreasonable length of time.

The time was considered necessary for the receivers to reach a determination as to what their action would be toward the agreement.

 No consent of the Public Service Commission was necessary for the termination of this agreement. The right of a railroad company to contract with another for the use of its road or any part thereof is controlled by section 148 of the Railroad Law of the State of New York (Consol. Laws, c. 49). The grantee or lessee under such an agreement does not need a franchise from the state for operation over the route of the grantor or lessor railroad. Ingersoll v. Nassau Elec. R., 157 N. Y. 453, 52 N. E. 545, 43 L. R. A. 236. Section 54 of the Public Service Commission Law (Consol. Laws, c. 48) requires the approval of a traffic agreement granting rights under the franchise of the owner to enter, but there is no statute requiring the consent of the commission for the termination of such agreement and the surrender of the rights to the owner. Section 184 of the Railroad Law applies to the abandonment by the railroad of a part of its charter or franchise rights.

In the instant case, the question merely involves a termination of operation by the New York State Railways upon the West Shore route of the New York Central Railroad, granted under the franchise rights of the latter railroad. Pittsburgh & S. Coal Co. v. Delaware & N. R. Co. (D. C.) 289 F. 133 properly holds that a railroad may not abandon a part of its road and continue operation of the remainder without the consent of the state. But it does not hold that a traffic agreement cannot be terminated without the consent of the state. Since the rights of the appellant are based solely upon the traffic agreement, the consent of the Public Service Commission was not required for a termination of this agreement while the New York State Railways was in receivership.

Order affirmed.